In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-2599

BRENDA MITZE,

*Plaintiff-Appellant,*

*v.*

CAROLYN W. COLVIN, Acting Commissioner of Social
  Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:13-cv-00444-WCG — **William C. Griesbach**, *Chief Judge.*

SUBMITTED MARCH 12, 2015 — DECIDED APRIL 9, 2015

Before POSNER, EASTERBROOK, and TINDER, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff applied for social se-
curity disability benefits in 2009, at the age of 43, claiming to
be disabled by a cyst (a liquid-filled sphere) in her pineal
gland, a small endocrine gland in the brain that produces
melatonin, which regulates sleep. After a hearing before an
administrative law judge in November 2011, her application

was rejected, and the rejection upheld by the district court, precipitating this appeal.

Pineal cysts are usually quite harmless, but not always; the plaintiff's cyst caused her to experience vertigo, blurred vision, and headaches. She argues that in combination these symptoms disable her from full-time gainful employment. She has a high-school education, is married and has children, but has never held a full-time job.

In 2010 she underwent brain surgery to remove the cyst. Although an MRI following the operation showed that the cyst had been removed and the site of the operation in the brain was healing normally, and her vertigo and vision problems had been resolved, within weeks she was complaining about pain and numbness in her head. Her surgeon referred her to a physician with expertise in anesthesiology, who prescribed drugs, and also referred her to two pain specialists. One suggested a treatment that she rejected—an "occipital nerve injection," which is an injection of a steroid at the back of the head to relieve pain, and is a standard procedure. She declined to consult the other pain specialist. Her primary physician then referred her to a third specialist, who recommended that she seek ongoing "tertiary" care (a higher level of specialty care) at a hospital in Madison, Wisconsin. She declined, saying she'd be unable to travel to Madison (a two-hour drive from her home) on a regular basis.

Though continuing to complain about pain, she did long-distance running in preparation for participating in a marathon. She didn't participate in the marathon after all, but she did run in a 5,000-meter race, and she runs for an hour daily. (She also traveled to Australia for a month.) Later an MRI

showed a possible pinched nerve in her neck and a narrowing of some nerve passageways.

In support of her application for disability benefits she submitted documents from two chiropractors. One said that on the basis of what the plaintiff had told him he thought that if employed she would need 15-minute breaks every 30 minutes and would miss work more than four times a month—which if true would preclude full-time gainful employment and thus render her totally disabled within the meaning of the Social Security Act. (Vocational experts, who testify at all Social Security disability hearings, invariably testify that missing work more than three days a month precludes full-time gainful employment, and the administrative law judges seem always to credit that testimony. See, e.g., *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013); *Pepper v. Colvin*, 712 F.3d 351, 361 (7th Cir. 2013); *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1096 (9th Cir. 2014).) The chiropractor may, however, have thought (or so at least the administrative law judge may have suspected he thought) that she might be exaggerating her symptoms. For he referred to her "dramatic presentation" of them and also reported that she'd told him that she runs an hour a day and was preparing for another foot race.

It's true that in medical jargon "dramatic presentation" refers to a sudden, intense cascade of symptoms observed by the doctor. In popular discourse, however, it might connote "dramatization" in the sense of exaggeration for effect, as in many operas. We don't know in what sense the chiropractor was using the term to describe the plaintiff's account of her symptoms, but as it is more commonly used as a medical term than in colloquial speech, and given that when asked

whether she is a malingerer the chiropractor said "no," we'll assume he was not accusing her of exaggerating.

The report of one of the chiropractors states that the plaintiff can walk three to four city blocks without pain, the report of the other that she can walk 10 city blocks without pain. (Walk—not run.) A city block, however, is not a uniform measure of distance. In Chicago 8 city blocks are a mile, in New York City 20 are. We don't know the length of the city blocks that the plaintiff was referring to. But we do know that 5,000 meters is 16,404 feet, which is slightly more than three miles—and the plaintiff *ran* 5,000 meters in a race, implying that she can walk far more than 10 city blocks without pain, regardless of exactly how long a city block should be assumed to be.

At her hearing before the administrative law judge, the plaintiff testified that her activities are severely limited by her pain and the side effects of the narcotic medications that she takes for it, which include drowsiness and diarrhea. She said that she experiences constant pain in her head that travels down her neck to her shoulders, that she sleeps most of the day and has trouble sleeping at night because of the pain, and that she drives only on back roads, does not read, watches only some television because it hurts her eyes, and uses her computer for only 20 minutes at a time. She submitted a note from her mother which states that the plaintiff is mostly homebound, has memory problems, and is unable to drive long distances or do laundry. The mother did not testify, however.

The vocational expert who testified at the hearing opined that someone with the plaintiff's limitations as determined by the administrative law judge would not be totally disa-

bled, because she would be able to perform sedentary, un-skilled work as a production inspector or bench assembly worker. He based this conclusion on the administrative law judge's finding that the plaintiff was exaggerating the severi-ty of her pain. The judge had not denied that she *has* pain—muscle pain (myofascial pain) in her neck and arthritis and inflammation in her neck joints (bilateral facet arthropathy). But he didn't believe that the pain was severe enough to dis-able her to the extent she claimed. Her treating physician's treatment notes largely just list her subjective reports of pain, with almost no attempt to evaluate their severity; about her pain symptoms he wrote that "she still feels she has modest pain" and "overall, her description of symptoms is essentially unchanged, but she does have improved pain control overall." His own observations are optimistic: "She actually appears to be in a better mood and more jovial than I have noted in the past" and "I did discuss with the patient that at this point, I am uncertain in regards to what her op-portunities are for further pain control and feel that she would be best served being evaluated by a pain physician that is involved in a tertiary setting." The treatment notes indicate a belief not that the applicant has disabling pain but that she was reporting pain symptoms and that he was not competent to treat her condition. While noting her reports of "persistent, chronic, severe neck pain," he did not explain how the pain limited her activities. Consistently with his emphasis on her need for tertiary care, he referred her to two pain specialists for a more definitive assessment of her con-dition than he could provide, yet she went to only one—and turned down the treatment that that specialist recommend-ed. She turned down other treatment options as well—still

another reason to think she may have been exaggerating her symptoms.

A further reason to doubt that the plaintiff's pain symptoms are totally disabling is her ability to run for an hour daily and run a 5,000-meter (3.1 mile) race and fly to and from Australia—very long flights (at least 20 hours each way), which a person with disabling pain would be likely to find extremely uncomfortable if he or she was traveling in coach, which so far as appears the plaintiff was.

Not the flights alone, not the daily running alone, not even the 5,000-meter race alone, but the combination of all these things, is, the administrative law judge could reasonably conclude, inconsistent with having pain severe enough to preclude full-time employment. Not being doctors, we won't deny the possibility, improbable as it seems, that running is therapeutic for people with disabling head pain—in fact she says that in her briefs in this court—but no evidence to that effect was presented at the hearing.

The briefs contain a number of other assertions that if true would indicate that she is indeed totally disabled. But assertions in briefs are not evidence, nor in this case based on evidence. The administrative law judge was entitled to find that the plaintiff, although she may well suffer from chronic pain, is capable of full-time employment and therefore not totally disabled.

AFFIRMED.