**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 14, 2019
Decided November 21, 2019

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 19-1514

| | |
|---|---|
| CHARLES PRIMM,<br>      *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Northern District of<br>Illinois, Eastern Division. |
| *v.* | No. 17 CV 6173 |
| ANDREW M. SAUL,<br>Commissioner of Social Security,<br>      *Defendant-Appellee*. | Thomas M. Durkin,<br>*Judge*. |

## O R D E R

Charles Primm applied for Social Security Disability Insurance Benefits, asserting that injuries he sustained on his last job, plus obesity and other ailments, so impaired him that he was unable to work from May 2006 through June 2014. An administrative law judge concluded that Primm was not disabled during that period because although he could not perform his old job, he could do light work—a conclusion upheld by the district court. Substantial evidence supports the ALJ's decision, so we affirm.

**I. Background**

While working as a baggage handler for United Airlines in May 2006, Primm, then 41 years old, injured his right shoulder, elbow, and neck. After this incident he stopped working. In March 2014, three months before his insured status expired, Primm applied for benefits, alleging that he had been unable to work since his injury due to several ailments. In his initial application, he cited a torn rotator cuff, cubital tunnel syndrome, and bulging disks in his neck. Later he added obesity, depression, anxiety, right medial epicondylitis (elbow tendinitis), and reduced mobility due to a 1998 knee surgery.

After Primm's injury, MRI and EMG tests requested by Dr. Eugene Lopez, his orthopedic surgeon, revealed "subtle" irregularity in the cartilage surrounding his right elbow, mild impingement of his right AC joint, mild inflammatory fluid surrounding a muscle in his right rotator cuff, and disk protrusions in his neck. Conservative management of Primm's elbow and shoulder pain failed to bring relief, so Dr. Lopez performed two surgeries: one to repair the tear in Primm's rotator cuff in October 2006 and the other to decompress and transpose a nerve in his elbow in May 2007. Dr. Lopez reported good results from the surgeries, noting in March 2007 that he was optimistic that Primm would "fully recover" and in July 2007 that he was doing "extremely well." Dr. Lopez ordered physical therapy, prescribed anti-inflammatories, and put Primm in a work-conditioning program with the hope that he would return to work in a month's time. After an apparent gap in treatment of nearly three years, Primm returned to Dr. Lopez in April 2010 complaining of pain in his right elbow and shoulder. Dr. Lopez ordered imaging that revealed Primm's elbow was normal but some abnormalities persisted with his shoulder. Primm saw Dr. Lopez until December 2010 and was prescribed medication for symptom relief.

As for Primm's neck injury, imaging ordered in November 2007 revealed multilevel mild degenerative disk changes. Primm saw Dr. Bruce Montella, a spine specialist, but the treatment notes are not in the record. There are two letters from Dr. Montella to Primm's primary-care physician, however. In June 2006 Dr. Montella wrote that Primm had "severe and debilitating" pain from cervical disk injury and radiculitis. In January 2008 Dr. Montella stated that Primm had "ongoing, severe, and debilitating" cervical disk herniation, making it unreasonable for Primm to work; he recommended physical therapy, anti-inflammatories, and epidural steroid injections. That same month Dr. David Spencer, a spine surgeon, performed an independent medical examination for Primm's worker's compensation claim, and after reviewing the 2007 MRI and physically examining Primm, concluded that Primm was able to return to

work with no limitations and no further treatment. He described the degeneration in Primm's neck as "age-appropriate" and found Primm's complaints to be "subjective" and not supported by "objective abnormalities." In May 2009 Dr. Spencer evaluated Primm again and repeated that no further treatment was necessary.

After December 2010 Primm did not seek treatment for more than three years, although he had health insurance. In April 2014 Primm returned to Dr. Lopez and reported pain in his right elbow. Dr. Lopez examined Primm, diagnosed medial and lateral epicondylitis, restarted physical therapy, and ordered a brace, opining that Primm would likely do well with "conservative management." This was Primm's last medical visit of record before his date last insured.

Primm had his ability to work evaluated multiple times before he applied for disability insurance because he sought worker's compensation. In October 2008 Dr. Lopez sent Primm for a functional capacity evaluation, and the evaluator concluded that Primm could frequently lift and carry 19.5 pounds but needed to avoid simple grasping, pushing/pulling, and fine and gross manipulation with his right hand. Thereafter, Dr. Lopez assigned permanent work restrictions of "light duty" with no repetitive work and no lifting over 15 pounds. In 2011 Kari Stafseth, a certified rehabilitation counselor who worked with Primm, opined that although Primm was "theoretically employable," his narrow work history, lack of transferable skills, restricted use of his right arm, and inability to obtain employment, despite applying for 200 jobs locally, made him "totally disabled." In June 2011 Primm was awarded worker's compensation benefits after an arbitrator concluded that his injury had temporarily disabled him.

After the Social Security Administration denied Primm's application initially and on reconsideration, an ALJ held a hearing on Primm's disability claim in August 2016. Primm testified that he could not stand for more than an hour at a time and that his arm swelled throughout the day, which he relieved by changing positions. He further stated that none of his doctors had given him specific work restrictions other than to caution him against using both arms to lift. And he noted that doctors had told him no further treatment other than pain medication would help him, but that he refused to take any medication because he feared becoming addicted to it and it made him "incoherent" and "foggy."

The ALJ asked a vocational expert about available work for an individual with Primm's age, education, and work experience, who can perform light work, with no limitations on his ability to sit, stand, and walk, and who can: lift up to 15 pounds at a

time and 10 pounds frequently; never push or pull with the right arm, but push or pull with the left arm with up to 15 pounds of force; never crawl, climb, work overhead with either arm, or perform repetitive motions with the neck; and frequently, but not constantly, perform manipulation with no forceful grasping or torqueing. The vocational expert replied that such an individual could not do Primm's past job but could work as a sales attendant or an inspector. If the individual had no ability to reach overhead with the right arm and the ability to manipulate objects only occasionally, the vocational expert testified, he could perform light work as an usher or mail clerk.

After the hearing the ALJ left the record open and invited additional evidence of Primm's limitations. Two months later Dr. Montella submitted a Residual Functional Capacity Questionnaire without supporting treatment notes or other records. He opined that Primm had been precluded from work since 2006 due to: photosensitivity, inability to concentrate, impaired sleep, and mood changes caused by headaches; reduced neck mobility; inability to sit for longer than 20 minutes at a time, to stand for more than 15 minutes at a time, to walk more than 2 minutes every 30 minutes, or to do any of those activities longer than 2 hours per day; and complete inability to use his right hand. Primm's attorney then submitted a letter stating that the record was complete.

The ALJ concluded in a written decision that Primm was not disabled. Applying the standard five-step analysis, 20 C.F.R. § 416.920(a)(4), the ALJ determined that Primm had not engaged in substantial gainful activity between his alleged onset date and date last insured (step one); that through his date last insured, his arthropathies and obesity were his only severe impairments (step two); and that neither of these impairments met the criteria of a listing (step three). The ALJ then found that Primm had the residual functional capacity that he had first articulated to the vocational expert. In making these findings, the ALJ concluded that the medical evidence did not support Primm's testimony, afforded no weight to the opinions of Dr. Montella and Kari Stafseth, and gave great weight to Dr. Lopez's opinions. The ALJ determined that Primm could not perform his past work (step four) but concluded that there were a significant number of jobs in the national economy that Primm could still perform (step five). The Appeals Council denied Primm's request for review, and the district court upheld the ALJ's decision.

## II. Discussion

On appeal Primm identifies myriad purported errors. But we will uphold the ALJ's ruling if substantial evidence supports it. 42 U.S.C. § 405(g); *Biestek v. Berryhill*,

139 S. Ct. 1148, 1152 (2019). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Our review is deferential; we will not reweigh the evidence or substitute our judgment for the ALJ's, even if reasonable minds could differ on the disability determination. *L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019).

Primm first attacks the residual functional capacity assessment, contending that the ALJ misweighed opinion evidence, failed to obtain material evidence, and wrongly discredited his testimony. These errors, Primm argues, led the ALJ to fail to account for the limitations caused by his knee surgery and depression.

We begin with Primm's contention that the ALJ erred in giving no weight to the opinion of Dr. Montella, one of Primm's treating physicians. At the time Primm filed his application, a treating physician's opinion was entitled to controlling weight if well supported by medical findings and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2). If a treating physician's opinion is not given controlling weight, the ALJ was required to consider specific factors in determining what weight, if any, to afford the opinion. *Id.* If the ALJ adequately considered these factors, his decision is entitled to deference. *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) (citing *Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008)).

After noting the length, frequency, and nature of the treating relationship, the ALJ articulated several reasons for discounting Dr. Montella's opinion. The fourth reason—"Dr. Montella's treatment notes are not in the record"—is dispositive because controlling weight can be given only to opinions supported with evidence. Primm faults the ALJ for failing to obtain these notes. But a claimant bears the burden of producing medical evidence, *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008), and Primm does not claim that anything impeded him from obtaining the notes himself. Although the ALJ should make "every reasonable effort" to develop the record, 20 C.F.R. § 404.1512(b)(1), an ALJ may assume that a counseled claimant "is making his strongest case for benefits," *Schloesser v. Berryhill*, 870 F.3d 712, 721 (7th Cir. 2017) (quoting *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)). Primm's reliance on a case involving a pro se claimant, *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009), is not convincing. The ALJ encouraged Primm's counsel to submit more evidence and held the record open after the hearing; later the ALJ reasonably accepted counsel's word that he had "submitted all of the records in this file." Primm has provided no explanation for why Dr. Montella's records were not produced.

The ALJ could not find support for Dr. Montella's opinions in other doctors' records either. Primm did not report headaches when completing a questionnaire at his final doctor's appointment before his date last insured and reported "no headaches or dizziness" later that year. There were also no reports of an abnormal gait, muscle weakness, or atrophy in Primm's legs. And in 2014 Primm did not report that his neck was a source of his orthopedic problems, nor did he report any neck mobility issues during the October 2008 functional capacity evaluation.

Rather, the ALJ explained that the record contradicted Dr. Montella's opinions. *See Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015) (upholding the rejection of the treating physician's opinion that was inconsistent with the opinions of other physicians). Primm resumed work after his 1998 knee surgery until his 2006 injury, and treatment notes from 2013 reported normal gait. Dr. Lopez consistently opined that Primm could perform light work and never reported the extreme limitations that Dr. Montella identified. And Dr. Spencer directly contradicted Dr. Montella's assessments: after examining Primm in January 2008 and May 2009 and reviewing his MRI results, Dr. Spencer opined that there was "absolutely no way" that Dr. Montella had found an objective explanation for Primm's reported neck pain.

Two arguments related to Dr. Montella remain. First, Primm asserts that it was impermissible for the ALJ to credit Dr. Spencer over Dr. Montella because Dr. Spencer was a nontreating source and because the workers' compensation decision "specifically rejected" Dr. Spencer's opinion. But an ALJ is entitled to credit the opinion of a nontreating physician over a treating physician if doing so is supported by evidence, and the ALJ here cited plenty. *Hall v. Berryhill*, 906 F.3d 640, 643 (7th Cir. 2018). The ALJ was also not bound by the workers' compensation decision, which did not apply social security law. 20 C.F.R. § 416.904.

Second, Primm contends that the ALJ overlooked the letters from Dr. Montella to Primm's primary-care physician about his neck injury. An ALJ "may not select and discuss only that evidence that favors" his conclusion but rather must confront opposing evidence and explain why he rejects it. *Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018) (internal quotation marks and citations omitted). Even so, these two one-page letters contain only conclusory findings that without the supporting records, would not have been entitled to much weight. Thus, the ALJ's failure to mention them was harmless error at most. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)).

Primm also argues that the ALJ also improperly discounted the opinion of Kari Stafseth, the rehabilitation counselor, that Primm was "totally disabled." An ALJ does not need to do more than explain the weight given to nonmedical sources. 20 C.F.R. § 404.1527(f)(2). After correctly determining that Stafseth was not a medical source, the ALJ articulated two reasons for giving her opinion no weight: it was based on the availability of jobs locally (and therefore was not based on the Social Security Act's standards), and it was inconsistent with Dr. Lopez's opinions. *Id.* § 404.1527(c)(4), (6). This explanation suffices.

Primm next argues that the ALJ improperly discredited his testimony. We defer to an ALJ's credibility assessment unless it is "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citing *Elder*, 529 F.3d at 413–14). But the ALJ must still explain his evaluation "in a rational manner, logically," and base it on "specific findings and the evidence in the record." *McKinzey*, 641 F.3d at 890.

Primm argues that the ALJ relied on irrelevant factors and minor inconsistencies. We agree that one of the reasons provided by the ALJ is weak. The ALJ noted that Primm applied to 200 jobs between August 2009 and 2010 but testified that he was incapable of work during that period. A job search, however, may be simply "overly-optimistic" rather than evidence of ability to work. *Gerstner v. Berryhill*, 879 F.3d 257, 265 (7th Cir. 2018). But the ALJ did not view this fact in isolation. He also observed that Primm may have lost motivation to find work in 2011 after he began receiving $300 per week and then a lump sum of approximately $300,000 in worker's compensation.

If that concluded the ALJ's credibility assessment, the case might be closer, but the ALJ pointed to many other factors. Primm regularly reported less severe symptoms to his doctors than he testified to. And although Primm takes issue with the ALJ's observation that Primm reported that his pain "comes and goes," which he argues is typical of chronic pain, an ALJ may consider the frequency of a claimant's pain. 20 C.F.R. § 404.1529(c)(3)(ii). Further, Primm did not receive ongoing treatment, despite having health insurance. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (infrequent treatment supports an adverse credibility finding). Primm argues that the ALJ ignored his valid explanation: "at some point" doctors told him that nothing more could be done to help him. That prognosis, however, is not in the medical record; rather, as recently as April 2014, Dr. Lopez prescribed physical therapy, which Primm did not attend.

Primm vaguely argues that all these inconsistencies are explained by "the fact that [his] condition is steadily worsening." But he did not testify to that, and it is not

supported by the medical record. With no other explanation to consider, the ALJ reasonably concluded that these inconsistencies, taken together, supported a finding that Primm exaggerated the limiting effects of his conditions.

Primm argues next that had the ALJ properly credited all the evidence, his residual functional capacity would have been far more limited. He contends that the ALJ ignored his depression, which would cause him to miss work and be off-task, and his knee injury, which is exacerbated by his obesity, limits his ability to sit, stand, or walk. The ALJ must consider all limitations imposed by medically determinable impairments, including by those that are not severe. 20 C.F.R. § 404.1545(a)(2). That happened here. After permissibly giving no weight to Dr. Montella's opinion and finding that Primm exaggerated his symptoms, the ALJ reasonably found that nothing in the record demonstrated that either ailment caused work-related restrictions.

Finally, Primm charges the ALJ with accepting "without question" testimony from the vocational expert as evidence that there were a significant number of jobs that Primm could perform. First, he argues, the ALJ failed to acknowledge that the vocational expert's opinion was inconsistent with Stafseth's and the workers' compensation decision. As already discussed, however, the ALJ reasonably gave Stafseth's opinion no weight. And because the workers' compensation decision primarily relied on Stafseth's opinion in concluding that Primm could not work, the ALJ's failure to separately discuss the decision was harmless. *McKinzey*, 641 F.3d at 892.

Second, Primm identifies problems with two jobs that the vocational expert found available: (1) it is "inconceivable" that a "sales attendant" would not have to reach overhead, as the vocational expert testified, and (2) according to the labor-market database Skilltran, "inspector" jobs are not available in significant numbers in the national economy. These arguments are new on appeal, so we need not address them. *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016); *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). What is more, Primm does not take issue with half the jobs the ALJ found available to him. Usher and mail-clerk positions account for 110,000 jobs nationally and are therefore enough to support the ALJ's finding. *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("1,000 jobs is a significant number").

Because none of Primm's challenges to the ALJ's decision have merit and that decision was supported by substantial evidence, we AFFIRM.