NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 26, 2021
Decided February 16, 2021

**Before**

DIANE S. SYKES, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 20-1845

| | |
|---|---|
| GLORIA JEAN KRUG, <br> *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| | No. 19-CV-38-JPS |
| *v.* | |
| ANDREW M. SAUL, <br> Commissioner of Social Security, <br> *Defendant-Appellee.* | J.P. Stadtmueller, <br> *Judge.* |

**O R D E R**

After voluntarily leaving her job at Wal-Mart, Gloria Krug applied for Social Security disability benefits. After a hearing, an administrative law judge ruled that Krug was not disabled because she could perform her past work. The district court upheld this decision. Because substantial evidence supports the ALJ's decision, we affirm.

Krug began working at Wal-Mart in 2005 and continued there until March 2015. She held positions as a greeter, cashier, fitting room attendant, telephone operator, and

floor associate. At times, she says, she struggled to repackage products in the fitting rooms and to communicate well with others due to her medical conditions. In 2015, her manager investigated claims that she was rude to a customer; in response she quit rather than face discharge.

Krug applied for social security disability insurance a few weeks after quitting her job at Wal-Mart, claiming that her medical conditions prevented her from working. A report that she completed for her claim asked her, "How do your illnesses, injuries, or conditions limit your ability to work?" She responded, "It doesn't limit me at all. I am going out and apply[ing] at places." With the help of a job coach from a state agency she found some seasonal jobs but no full-time work.

Krug was born with cerebral palsy. No medical records describe any limitations caused by that condition, but her testimony before the ALJ asserted some limits. She testified that cerebral palsy deformed her left arm, leaving her unable to grip with her left hand, and shortened her left leg. Her left arm stabilizes objects that she manipulates with her right hand. She could lift between 20 to 50 pounds at work, but when shopping she may drop heavy items. Krug can walk and stand for up to an hour and a half continuously, though she has some pain and may fall.

Before 2014 Krug took several drugs for two other chronic conditions—attention deficit hyperactivity disorder and fatigue, but in March 2014 her new primary care doctor successfully weaned her off most of them. (This doctor also noted that Krug's previous physician diagnosed her with sleep apnea and narcolepsy, but those diagnoses had not been more recently substantiated.) Although Krug complained of irritability, her doctor concluded that the medicine was "working fairly well." Krug later told the doctor that she often had trouble waking for work despite setting several alarms. The doctor asked Krug's employer to allow Krug to miss one day of work every three weeks as she adjusted Krug's medicine to the optimal dosage. But by March 2015, shortly after Krug applied for disability insurance, the doctor found that Krug was "doing fairly well" after putting Krug on a higher dose of her one remaining ADHD drug.

Krug also asserts a history of asthma, seizures, anxiety, and depression, but the sparse medical records pertaining to these conditions suggest that they are under control. A medical note from 2013 states that Krug took a drug to control seizures, and that her last seizure occurred two years prior. Still taking the drug at the time that she filed for disability insurance in 2015, Krug testified that her seizures were under control. As of that time, Krug's asthma was also "stable" and she "ha[d] not had any recent exacerbations, hospitalizations or intubation[s]." Finally, also at the time of her filing, Krug told her doctor that she was not experiencing depression or anxiety, though her

doctor noted that Krug was on anti-depressants and faced "some depression due to [a] recent job loss." These conditions formed the basis of Krug's disability claim.

An administrative law judge denied Krug's claim. The ALJ proceeded through the familiar five-step analysis. At step 1, he found that after the alleged onset date, Krug had no substantial gainful work. The ALJ found at step 2 two severe impairments (cerebral palsy and asthma) and four non-severe impairments (seizures, sleep apnea/fatigue, ADHD, and anxiety). At step 3, however, he found that none of these— in isolation or combined—established a per se disability. At step 4 the ALJ rejected Krug's assertion that her mental and physical conditions disabled her from work. He explained that her assertion was not credible because it was contradicted by her admission that she quit her job at Wal-Mart for reasons other than her health, and it was refuted by the absence of medical records reflecting significant workplace concerns about her impairments. Therefore, he found, she retained the ability to perform light work, including her past work at Wal-Mart, and was thus not disabled. The ALJ continued to step 5, despite finding Krug not disabled under step 4. Based on the testimony of a vocational expert, the ALJ concluded that Krug could perform numerous jobs in the national economy, reinforcing the finding that she was not disabled.

We review the district court's decision de novo and ask whether the ALJ's decision was based on substantial evidence. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Krug first disagrees with the ALJ's ruling that her limitations do not significantly affect her ability to work. She begins with her mental functioning. The relevant evidence supports the ALJ's finding that her mental limitations were mild. She self-reported that her medical condition "doesn't limit her at all." Later, in the same report, she elaborated: she knows how to engage in routine activities of daily living; she interacts with others by socializing regularly at church, going out to meals occasionally, and although she has to work at following instructions, she gets along well with authority figures. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12(A)(2)(b). Krug responds that her statement that her health "doesn't limit her at all" is itself evidence that she is severely mentally limited. But she points to no independent evidence substantiating her assertion. Because the ALJ reached a reasonable conclusion about Krug's mental functions by weighing available evidence, we will not disturb the conclusion. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Krug also disagrees with the ALJ's decision about her physical capabilities. She argues that her asthma, sleep disorder, and seizures did significantly limit her physical ability to work and that more medical evidence is necessary (such as a consultative exam and records from her job coach) to prove the point. But Krug had the burden to supply that evidence to the ALJ. *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). Moreover, during her hearing, Krug's counsel affirmed that the record was complete. She does not explain why the ALJ should have investigated further after receiving this assurance and given that the ALJ may presume that represented claimants are presenting their strongest case. *Schloesser v. Berryhill*, 870 F.3d 712, 721 (7th Cir. 2017).

In any event, the medical records that Krug furnished allowed the ALJ to find that these physical impairments did not disable her from work. Her asthma, sleep issues, and seizures were well controlled (her asthma was "stable," she had no record of recent seizures, and her ADHD medication managed her fatigue fairly well at the time of her alleged onset date). Her doctor's request for Krug to have some time off work is not evidence that undermines the ALJ's decision. *See Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014). The doctor made the request as she worked to find the right dosage of medicine to manage Krug's fatigue. And around the time of Krug's alleged onset date, she was not complaining of fatigue, as the dosage of the drug then had Krug "doing fairly well."

Focusing next on her cerebral palsy, Krug argues that the ALJ erred in discounting, as inconsistent with medical evidence, her assertion that this physical condition severely limits her ability to work. This court reviews credibility findings deferentially, remanding only in cases where the determination is patently wrong. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). The ALJ permissibly observed that Krug's medical records revealed no "concerns related to her cerebral palsy," and her own application stated that she was not limited in her work; therefore, the ALJ reasonably rejected her assertion that her cerebral palsy caused severe limitations as not credible. When this evidence is considered along with Krug's hearing testimony that she quit work to avoid discharge for rudeness, the ALJ permissibly found that her cerebral palsy symptoms were not as severe as alleged. *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

Krug's second line of attack centers on the ALJ's assessment of her residual functional capacity. When determining a claimant's residual capacity to work, the ALJ must consider in combination all limitations on the claimant's ability to work, including those that are not individually severe. *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). Krug argues that in the part of his decision discussing her residual capacity to work, the ALJ did not mention limitations caused by her sleep apnea and chronic fatigue or

discuss her intellectual limitations. But elsewhere in his decision the ALJ noted that he did not believe that Krug's sleep disorder or fatigue limited her ability to work because the medical records refuted the claim. And as noted above, the ALJ addressed Krug's mental impairments and why they caused no more than minimal limitations. The ALJ need not repeat this analysis in the portion of the decision discussing residual functional capacity. *See Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019).

Krug replies that the analysis of her residual capacity to work is inadequate because the ALJ did not follow the Social Security Administration's binding guidance in Social Security Ruling 96-8p. *See* SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996); *see also Jeske v. Saul*, 955 F.3d 583, 595 (7th Cir. 2020). SSR 96-8p enumerates seven functions that an ALJ must consider when evaluating residual capacity to work: sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 96-8p, 61 Fed. Reg. at 34477; *Jeske*, 955 F.3d at 595–96. But a decision that lacks a function-by-function analysis does not require remand if the reviewing court is satisfied the ALJ implicitly considered each function. *Jeske*, 955 F.3d at 596 (joining several other circuits that have held the same).

Though the ALJ did not explicitly analyze each function, the analysis here is implicit and therefore sufficient. When a claimant does not allege a functional limitation and the record does not reflect one, no discussion is needed. *Jeske*, 955 F.3d at 596. When a claimant does allege a functional limitation, the analysis is adequate if the ALJ validly finds the allegation not credible and evidence does not otherwise support the alleged limitation. *Id.* That occurred here. As mentioned above, the ALJ found Krug's assertion of fatigue incredible because it conflicted with the medical evidence; he did not need to repeat that finding in discussing her residual capacity to work. As for Krug's testimony that her cerebral palsy severely limited her ability to stand, walk, and carry objects, the ALJ also adequately explained elsewhere in his decision why he discounted that testimony, and Krug testified that she quit working because of a workplace conflict, not physical incapacity. This discussion suffices to support the ALJ's decision, later in his opinion, that Krug's asserted functional limitations did not deprive her of the residual capacity to work at her previous job. *See Jeske*, 955 F.3d at 596.

Krug invites us to overturn *Jeske,* arguing that our ruling was inconsistent with SSR 96-8p because the decision allows an ALJ to circumvent the rule's requirement that functional limitations "must" be identified on a function-by-function basis. *See* SSR 96-8p, 61 Fed. Reg. at 34475. But *Jeske* is settled circuit precedent. Just last month we relied on *Jeske* to reiterate the importance of reading the entirety of an ALJ's decision together; anything else would result in redundancies in the analysis. *Zellweger v. Saul*, No. 19-2472, 2021 WL 129658, at *3 (7th Cir. Jan. 14, 2021) (reversing district court for failing to

read ALJ's decision "holistically"). Krug provides no compelling reasons for us to revisit *Jeske* now.

Krug's final argument is that the ALJ improperly found that she could adapt to other jobs. The finding, she observes, rested on a vocational expert's testimony that included national, but no local, job numbers. But even if this testimony was insufficient, it had no bearing on the ALJ's ultimate decision: he ruled at Step 4 that Krug was not disabled because she could perform her past work-related activities. *See Castile v. Astrue*, 617 F.3d 923, 925 (7th Cir. 2010); 20 C.F.R. § 404.1520(a)(4). Remand is therefore unnecessary because, even if an error occurred at step 5, correcting it on remand would not change the outcome. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

AFFIRMED