In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2106

BETTIE BURMESTER,

*Plaintiff-Appellant,*

*v.*

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:15-cv-01393-WCG — **William C. Griesbach**, *Chief Judge.*

ARGUED DECEMBER 4, 2018 — DECIDED APRIL 5, 2019

Before BAUER, KANNE, and BRENNAN, *Circuit Judges*.

BAUER, *Circuit Judge.* Bettie Burmester applied for disability insurance benefits claiming she was unable to work due to physical impairments affecting her joints, chronic pain, and poor mental health. The Social Security Administration ("SSA") denied her application. Burmester appeals the decision

of the ALJ that held she was not disabled and the district court opinion affirming the ALJ's denial of benefits. For the following reasons, we agree with the district court and affirm.

## I.  BACKGROUND

On December 20, 2010, Burmester applied for disability benefits alleging a June 26, 2008, onset of her disability. She claimed her ability to work was limited by degenerative disc disease, pseudo-gout in her left knee, osteoarthritis in both knees and left thumb, a heart condition, and depression. The application was denied on May 11, 2011, and on October 3, 2011. Burmester requested a hearing.

On December 10, 2012, ALJ Patrick Morrison conducted a hearing. Burmester testified that she lived in a townhouse with her husband, and had completed high school and one year of technical college. She worked as a hand packager for the manufacturing company Briggs & Stratton for many years. She was employed as a part-time attendant at the Bradley Center, an arena located in Milwaukee. Her job duties included checking the validity of tickets and directing event goers to their seats.

Burmester amended the onset date of her disability to September 1, 2009. When asked to rank her impairments by severity, she listed back spasms, rheumatoid arthritis in her hands and feet, knee pain, and fibromyalgia as her most limiting conditions. The ALJ also noted that Burmester had chondromalacia (also known as "runner's knee"), gout, and right shoulder issues. Burmester testified that her hypertension was under control, that she gets about three migraine head-

aches a year, and that she had been diagnosed with anxiety and depression.

For her daily activities, Burmester testified that her husband helped her out of bed but she was otherwise independent in her own self care. Her husband did the cooking, cleaning, paid the bills, and went grocery shopping and a friend helped with cleaning once a week. Burmester was able to go to church once a week; out to dinner once a month; use the computer to check her email and social media accounts; and walk her dog half a block twice a day. Her treating physician prescribed the use of a cane.

On January 17, 2013, in a written decision, the ALJ determined that Burmester was not disabled. Burmester successfully appealed that decision to the Appeals Council, and her case was remanded to the ALJ for further hearings.

The second hearing was held on June 3, 2014. Burmester again amended her disability onset date to September 6, 2009. She testified that she suffered from degenerative disc and joint disease in her lumbar spine, right shoulder impingement syndrome, chondromalacia in the left patella, rheumatoid arthritis in her feet and hands, neck pain, gout, high blood pressure, trochanteric bursitis in her hips, and Type II diabetes. She took Percocet and morphine for pain management, and received Remicade infusions every six weeks to treat her rheumatoid arthritis. Burmester stated again that she had been diagnosed with anxiety and depression, and reported having panic attacks every three months.

At the time of the hearing, she lived with her husband and adult son who cooked her meals and did the grocery shopping.

She would do some cleaning, but her son or husband would finish it when she inevitably became too sore to continue. She reported attending church twice a month, and going out to eat once a month. She also let her dog outside and walked around the backyard with him for twenty minutes at a time.

On July 16, 2014, the ALJ found that Burmester was not disabled; he concluded that "based upon the overall objective diagnostic imaging, physical examination, and mental status findings, the claimant's admitted high level of daily functioning contradicting her hearing testimony, as well as her multiple inconsistent statements (such as regarding drug use, short and long-term memory, and ability to concentrate), the undersigned finds that her allegations of disability are not fully substantiated in the record." The ALJ found that she had the residual function capacity (RFC) to perform light work,

> except with no more than frequent reaching overhead with the right upper extremity and no work on ladders, ropes, scaffolding, or at unprotected heights. She also is mentally limited to simple, routine, repetitive tasks requiring only simple work-related decisions with few changes in the routine work setting and no more than occasional interaction with supervisors, coworkers, and the general public.

Based on the testimony of a vocational expert, the ALJ found that Burmester could not continue her past relevant work as a hand packager, but that a significant number of jobs existed in the national economy that Burmester could perform—such as router, price marker, or routing clerk. The Appeals Council

denied Burmester's request for a review and the ALJ's decision became final. The district court upheld the ALJ's decision.

## II.  LEGAL STANDARD

We will uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). The court is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008.)

## III.  ANALYSIS

Burmester argues that the ALJ improperly relied on boilerplate language in discussing Burmester's credibility without giving a proper explanation for his decision. She contends the ALJ failed to consider the entire time period at issue and unduly relied on Burmester's daily activities as evidence that Burmester could work.

The fact that the "ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination." *Pepper v. Colvin*, 712 F.3d 351,

367–68 (7th Cir. 2013). While the ALJ used boilerplate language here, he went further and included information that supported the decision. The fourteen-page opinion contains a detailed recitation of the medical evidence in this case. The ALJ determined Burmester was unable to perform her past relevant work but found she was capable of light work, subject to limitations which included no work on ladders or scaffolds, being limited to simple routine tasks requiring simple decisions, and having to face limited interactions with the general public. This finding was more limiting than that of any state agency doctor or psychologist, illustrating reasoned consideration given to the evidence Burmester presented.

The ALJ did not equate Burmester's ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules at the time the ALJ made his decision in 2014. See SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186 (July 2, 1996) (superseded prospectively by SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029 (Mar. 16, 2016)).[1] We may disturb the ALJ's credibility finding only if it is "patently wrong." *See Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). Here, the ALJ's

---

[1] Burmester cited several cases in which this court applied SSR 16-3p retroactively, including *Cole v. Colvin*, 831 F.3d 411 (7th Cir. 2016). Subsequent to *Colvin*, the Social Security Administration gave additional guidance that reviewing courts should apply the regulation that was in force when the ALJ made his decision. *See Evaluation of Symptoms in Disability Claims*, 82 Fed. Reg. 49463, 49463-4 (Oct. 25, 2017). We follow that guidance here and apply SSR 96-7p.

determination was not patently wrong because of the many specific reasons the ALJ cited from the record. *See Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) (Symptom analysis not "patently wrong" because the ALJ had "many specific reasons supported by the evidence."). These include: diagnostic imaging documenting only mild to moderate findings in Burmester's back, hips and feet; normal findings of strength and range of motion; and having intact memory and good communication skills. The ALJ also noted that Burmester's daily life demonstrated a high level of daily functioning, "suggesting she is not as limited as her allegations of disabling symptoms would indicate."

Next, Burmester argues that the ALJ erred in finding she had moderate difficulties in her ability to sustain concentration, persistence or pace ("CPP"), while failing to include those limitations in the residual capacity evaluation or questions to the vocation expert. It is well-established that "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). However, an ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination. *See Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (citing *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987) ("All that is required is that the hypothetical question [to the VE] be supported by the medical evidence in the record.")).

Here, the ALJ gave great weight to the opinion of Dr. Jeremy Meyers, who stated in the "Statement of Work

Capacity" portion of his assessment that Burmester had the "ability to understand, remember and carry out simple instructions subject to physical limitations," that "maintaining concentration and attention should be manageable" and that she "should be able to withstand routine work stress and adapt to typical job site changes." These limitations were given to the vocational expert. The ALJ gave the VE the hypothetical of a person "limited to simple, routine, repetitive tasks which would require only simple work-related decision making and would require few changes in the routine work setting with no more than occasional interaction with supervisors, coworkers, and the general public."

Earlier in his report, Dr. Meyers also stated that "[i]t is the opinion of the examiner that Ms. Burmester is able to devote an hour to an enjoyed activity such as reading before feeling a need to go on to something else." Burmester argues that the ALJ improperly ignored this limitation on CPP in his hypothetical to the vocational expert. If Dr. Meyers intended for this statement to be a conclusion that Burmester was unable to concentrate for more than an hour at work, Dr. Meyers would have included that limitation in his "Statement of Work Capacity." Instead Dr. Meyers states that maintaining concentration for Burmester should be "manageable." The ALJ summarized Dr. Meyers' report as concluding that Burmester was able to maintain concentration and attention. The ALJ appropriately relied on the narrative statement in crafting the hypothetical to the vocation expert and the RFC. *See Baldwin v. Berryhill*, 746 F. App'x 580, 584 (7th Cir. 2018) (ALJ did not err in ignoring a finding that plaintiff was moderately limited in concentration and pace where the psychologist's narrative in

the same report indicated plaintiff had the concentration and pace "necessary to fulfill a normal workday" and where subsequent medication improved plaintiff's mental health and mood).

There was no other finding in the report that Burmester was unable to concentrate on work, unlike in *DeCamp v. Berryhill*, 916 F.3d 671, 675–6 (7th Cir. 2019). In *DeCamp*, the plaintiff's doctors listed moderate difficulties in concentration in a checkbox section of their reports, but did not include such limitations in their narrative conclusions. *Id*. The ALJ presented a hypothetical to the vocational expert based solely on the narratives, omitting any reference to limitations on concentration at work, instead limiting plaintiff to "unskilled work" with no "fast-paced production line or tandem tasks." *Id*. at 675. We noted that we have "repeatedly rejected the notion that a hypothetical … confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Id*. at 676. Here, there was no such checkbox indicating a moderate limitation, there was only the Statement of Work Capacity indicating that concentrating at work would be manageable for Burmester. The report did not conclude that work must be limited to one hour increments to be manageable for Burmester.

The ALJ's interpretation of Dr. Meyers' report is also consistent with the rest of the record. Dr. Rattan, who reviewed Dr. Meyers opinion, also concluded there was no limitation on Burmester's concentration. Her mental health treatment notes showed mostly normal findings. Burmester herself stated she could finish what she started and follow instructions.

Burmester also argues that the ALJ failed to properly weigh medical opinions when he rejected the opinion of her treating physicians. The ALJ was required to give "controlling weight" to a treating physician's medical opinion on the nature and severity of an impairment if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with other substantial evidence." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010); 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 SSR LEXIS 9. The exclusion of the treating physicians was not unsupported in the ALJ opinion. Instead, the ALJ provided detailed reasons for his finding that the opinions of Dr. Bustos and Dr. Centena were not supported by the record.

Dr. Bustos' July 2011 assessment of Burmester was the most physically limiting of any of the reports given to the ALJ. Dr. Bustos indicated that Burmester could rarely lift ten pounds, required a cane, was unable to bend or stoop, and that her pain was enough to constantly interfere with her concentration. The assessment, consisting of a series of checked boxes, was internally inconsistent. Dr. Bustos stated that Burmester could sit and stand for more than two hours, but also found she was unable to sit and stand for more than two hours in an eight-hour workday. Dr. Bustos' own notes also contradicted the assessment, stating that Burmester exhibited a normal gait and had no difficulties with heel and toe walking. Dr. Bustos was also contradicted by other medical evidence. The state agency medical consultants found Burmester capable of light work and she was observed carrying ten pound weights up and down stairs. Further, Burmester admitted that she spent three or four hours a day reading, contradicting Dr. Bustos'

finding that her pain constantly interfered with her concentration.

Dr. Centena provided the most mentally limiting opinion, describing Burmester as having no useful ability to regularly attend work or complete a normal workday. This opinion was inconsistent with the record and Dr. Centena's own notes which showed Burmester had logical thought processes, functioning memory, and intact judgment. The state psychologists found Burmester was doing well and stable on her medications for depression and anxiety. Additionally, Burmester admitted that she could follow simple instructions, and that she cooked, cleaned, shopped and managed money.

## IV.  CONCLUSION

The ALJ did not improperly evaluate Burmester's credibility, nor did he erroneously reject the opinions of medical experts. The ALJ's opinion that Burmester was not disabled was supported by substantial evidence. The ALJ's decision, and the district court opinion, are AFFIRMED.