**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 18, 2019
Decided January 22, 2020

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, JR., *Circuit Judge*

No. 19-1873

| | |
|---|---|
| HELEN OVERTON, <br>     *Plaintiff-Appellant,* | Appeal from the United States District <br> Court for the Central District of Illinois. |
| *v.* | No. 4:17-cv-04259-SLD-JEH |
| ANDREW SAUL, <br> Commissioner of Social Security, <br>     *Defendant-Appellee.* | Sara Darrow, <br> *Chief Judge.* |

**O R D E R**

Helen Overton applied for Social Security disability benefits based on a host of impairments, eventually including chronic migraines. An administrative law judge denied Overton's application on the ground that, despite her many severe impairments (not including migraines), she retained the residual functional capacity ("RFC") to perform light work with some limitations. The district court upheld that decision. On appeal, Overton winnows her arguments, contending only the ALJ failed to properly consider the limiting effects of her migraines. Because the ALJ's decision was supported by substantial evidence, we affirm.

## I.  Background

Overton applied for benefits in September 2011, claiming she was unable to work as of June 2010 because of back, knee, and shoulder pain, bipolar disorder, and depression—all of which she says were exacerbated by a car accident she was involved in that month. On her initial application as well as her request for redetermination, Overton did not list migraines among the conditions limiting her ability to work. Nor did she add them as a limiting condition on the updated disability report she submitted in May 2012. It was not until Overton filed a prehearing brief in December 2013 that she argued her migraines were a limiting condition. There, she described two migraine-related doctor's visits at which she received Botox injections and noted she experienced marked improvement as a result.

After applying the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(a)(4), the ALJ denied Overton benefits. The ALJ determined that some of Overton's impairments were severe, but not her migraines, which were "well controlled" by Botox. The ALJ also rejected as inconsistent with the medical record Overton's testimony that even with Botox she had two to three migraines per month. Although the ALJ concluded that Overton could perform light work, he added moderate limitations when her symptoms were "exacerbate[ed]." Relying on the testimony of a vocational expert, the ALJ also concluded that although Overton could not perform her past work, there were jobs available in the national economy for someone with her RFC.

When Overton appealed this decision to the Appeals Council, she did not raise the ALJ's assessment of her migraines as a reversible error. After the Council initially denied review, Overton sought judicial review, and the parties stipulated in the district court to a remand. The Appeals Council then identified a number of deficiencies in the decision and directed the ALJ to reevaluate them; none specifically related to the ALJ's treatment of Overton's migraines.

Before the second hearing, Overton listed 25 allegedly severe impairments, but migraines were not among them. And although Overton provided additional records documenting her complaints of migraines and any prescribed treatment, she never submitted a medical opinion about the limiting effects of her migraines, nor did any consulting or examining physician ascribe such limitations. At that hearing, Overton testified her migraines had worsened since the last hearing and that, even with Botox treatment, she now had 10 to 12 migraines per month. With Botox, she said her migraines lasted two to three days; without it, they lasted three to four days. Overton

explained that during a migraine, she was unable to do anything and needed to avoid light and noise.

In a 58-page decision, the ALJ denied benefits. Again, he found that Overton's migraines were not severe. Overton's hearing testimony, the ALJ concluded, was contradicted by her medical records, which suggested her headaches did not occur with the frequency she now alleged, but rather were "generally well controlled with Botox injections." The ALJ noted Overton's migraines were "more problematic" when she lost insurance coverage for Botox treatment for 30 months, but he concluded that, even then, her migraines did not cause work-related limitations because she had "successfully worked for years" with the longstanding condition. Overall, the ALJ found that Overton's RFC had not changed since the first hearing, and, relying on the vocational expert's earlier testimony, the ALJ concluded that there were still sufficient jobs in the national economy that Overton could perform.

The Appeals Council did not assume jurisdiction, and Overton again appealed to the district court. A magistrate judge recommended affirming and, over Overton's objections, the district judge adopted the recommendation.

## II.    Discussion

We will uphold an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "Our review is deferential: we will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). We will, however, "examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions" that allows us to sufficiently "assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). Overton contends the ALJ did not build a "logical bridge" between his recitation of her medical record and his conclusion she did not suffer any work-related limitations from her migraines, both when she had coverage for Botox treatment and when she did not.[1]  We disagree.

Although the record contained numerous opinions regarding Overton's functional capacity, none identified any migraine-related limitations. And there is no objective measure for migraine symptoms, *Moore*, 743 F.3d at 1124, so the ALJ could only determine the limiting effects of Overton's migraines by assessing her credibility.

---

[1] Overton does not challenge the ALJ's finding that her migraines were not severe.

The facts for the ALJ to consider were Overton's subjective statements to her doctors and at the administrative hearings about the frequency and severity of her migraine-related symptoms. Such statements are always subject to the ALJ's credibility assessment in light of the record. *See Mitze v. Colvin*, 782 F.3d 879, 881–82 (7th Cir. 2015) (where doctor merely recounts claimant's subjective reports of pain, ALJ must discern whether claimant exaggerated).

"We may disturb the ALJ's credibility finding only if it is 'patently wrong.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Because the ALJ cited specific reasons from the record for discounting Overton's reports of disabling migraines, that standard is not met here. *See id.* In particular, the ALJ relied on inconsistencies as to (1) the effectiveness of Botox injections at controlling Overton's migraines, and (2) the impact of her migraine-related symptoms on her daily life and ability to work. *See* 20 C.F.R. § 404.1529(c)(4) (directing ALJs to consider inconsistencies when making credibility determinations).

First, the ALJ pointed to discrepancies in Overton's statements about the effectiveness of Botox. At both hearings, Overton downplayed that treatment. In December 2013, she claimed even with Botox she endured two or three migraines per month, each lasting one to three days. In March 2017, she testified Botox was even less effective; she said she now had migraines 10 to 12 times per month for two or three days at a time. Yet, after Overton resumed Botox treatment in June 2016, the next month she told her treating medical provider the treatment "significantly helped her migraine symptoms," and in August 2016 she said her "headaches [were] significantly better." By October 2016, this same provider recorded that Overton's headaches were "quiescent on her current medications." And just two months before the second hearing, Overton reported to a physician her migraines were "improved" and "Botox is working." Further, she sought almost no medical treatment for her migraines in the year preceding the first hearing, having told her neurologist that, with Botox, she had only three migraines every four months. Given this record, it was not patently wrong for the ALJ to discount Overton's hearing testimony and instead credit her consistent statements to her providers in concluding that her migraines were "well controlled" with Botox. *See Burmester*, 920 F.3d at 510.

Second, the ALJ identified facts that cast doubt on the alleged severity of Overton's migraines and their impact on her daily life. As the ALJ noted, Overton depicted herself "as not capable of doing much of anything." But Overton told her treating medical provider she walked three miles each day for exercise, something the

ALJ reasonably deemed inconsistent with her hearing testimony. Further, Overton's migraines were not a new impairment: the condition began in 1995, with virtually the same symptoms over time, except when their frequency decreased after she started Botox treatments in late 2009. Between 1995 and her car accident in 2010, however, Overton performed substantial work. *See Eichstadt v. Astrue*, 534 F.3d 663, 666 (7th Cir. 2008) (conditions with which a claimant was able to sustain substantial employment do not support disability claim).

Overton contends her work history is irrelevant because she testified her overall condition has worsened over time. But, as discussed above, the ALJ did not find her testimony on this point credible because it was inconsistent with the record. *Cf. Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (ALJ improperly relied on claimant's work history because he did not explain why he discredited her testimony that her condition worsened over time). To the extent Overton alludes to a connection between her migraines and her other conditions, she has not developed an argument the ALJ overlooked medical evidence that her other conditions exacerbated her migraines, either as to severity or frequency. *See Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (underdeveloped arguments are waived). Moreover, Overton's RFC accounts for the combination of her impairments.

Overton also presses that, at the very least, her migraine condition was significantly worse during the 30-month period she went without Botox treatment after she lost her health insurance. During that time period, Overton argues, she consistently told her psychiatrist migraines had "taken over her life," and in a journal she kept at her neurologist's request during that period she logged experiencing twenty-five days of headaches in one month. Yet, the record also shows Overton told her treating medical provider her headaches were stable, though still bothersome, and Sudafed and Claritin provided her partial relief when she was without Botox. And Overton did not provide any evidence that, when she lacked insurance, her migraines were worse than before she was first prescribed Botox in 2009, during which time she performed substantial work in spite of her longstanding migraine condition. Given all of this, the ALJ reasonably concluded Overton's ability to work was not limited by migraines even when she lacked insurance coverage for Botox. Overton essentially asks us to reweigh the conflicting evidence about this period and come to a different conclusion, which we cannot do. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). Because the ALJ's decision was supported by substantial evidence, the district court's decision is

AFFIRMED.