NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2020
Decided July 14, 2020

*Before*

DIANE S. SYKES, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 19-3313

| | |
|---|---|
| MICHAEL D. SOSH,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Northern District of Indiana,<br>Fort Wayne Division. |
| *v.* | No. 1:18-CV-249-HAB |
| ANDREW M. SAUL,<br>Commissioner of Social Security,<br>    *Defendant-Appellee.* | Holly A. Brady,<br>*Judge.* |

**O R D E R**

Michael Sosh applied for disability benefits, asserting that he was unable to work because of various mental and physical impairments, including chronic obstructive pulmonary disease (COPD). After weighing the medical evidence, an administrative law judge denied Sosh's application, concluding that Sosh could perform a range of light work with limitations. On appeal, Sosh contends that the ALJ erred by (1) failing to include enough restrictions in his residual functional capacity to accommodate his COPD, and (2) improperly rejecting the opinion of a nurse practitioner who treated his COPD. Because substantial evidence supports the ALJ's conclusions, we affirm.

## I. Background

### A.  Medical history

Sosh has various ailments that he contends contribute to his disability, including arthritis, degenerative spinal injuries, and generalized anxiety disorder. But only one ailment is relevant to this appeal: his diagnosis of COPD, an inflammatory disease that obstructs airflow from the lungs.

Even before his COPD diagnosis in 2015, Sosh intermittently went to the emergency room complaining of respiratory issues. At first, these hospital visits were infrequent, occurring only once in 2010 and in 2011, not at all in 2012, and twice in 2013.

But Sosh's respiratory problems intensified in 2014. In June, he went to the emergency room because he had been sick for five days and felt like he was "gasping for air." Doctors diagnosed him with bronchitis and treated his symptoms using a nebulizer. In early October, Sosh returned to the emergency room with similar symptoms, and he was given a personal inhaler and again treated with a nebulizer. His primary care provider then prescribed him a nebulizer for use at home "as needed … every 6 hours." Even with the home nebulizer, Sosh had another week-long respiratory infection at the end of November and again needed treatment in the emergency room.

Sosh's respiratory issues continued to worsen. In February 2015, he was hospitalized with hypoxic respiratory failure (a lack of oxygen in the blood from shortness of breath). He remained in the hospital for seven days before being discharged and prescribed various medications, including a steroid (Prednisone), an anti-inflammatory (Singulair), two preventative inhalers (Advair and Spiriva), and a rescue inhaler (Albuterol). Upon Sosh's discharge, a doctor noted that Sosh may have COPD and scheduled a follow-up appointment with a pulmonary specialist.

In March 2015, Sosh saw the pulmonary specialist, Dr. Rajeev Mehta, who diagnosed him with stage-1 COPD based in part on a pulmonary-function test that showed mild obstruction. Notwithstanding this mild obstruction, Dr. Mehta found that Sosh was breathing "very well," with no chest pain, wheezing, or coughing. The doctor also noted Sosh's report that he had not recently used his rescue inhaler. Dr. Mehta attributed Sosh's hospitalization the previous month to a COPD "exacerbation," or flare-up.

A few months later, Sosh had another COPD exacerbation and was hospitalized for seven days. He reported to the emergency room with shortness of breath, coughing,

headaches, lightheadedness, and a fever, and was found to be hypoxic. Doctors treated him with oxygen, antibiotics, steroids, inhalers, and nebulizer sessions. By his third day in the hospital, Sosh's symptoms had begun to improve. Dr. Mehta—the examining doctor—reaffirmed his diagnosis of stage I COPD and recommended that Sosh continue treatment with a nebulizer, steroids, and antibiotics.

Sosh seemed to recover over the next month. Although he had a cough and shortness of breath, his breathing sounded normal, and there were no other signs of pulmonary issues. Sosh then remained healthy for the rest of the year: During routine medical appointments in August, October, and December, his lungs were clear, and he had no respiratory complaints.

Throughout 2016, Sosh's COPD was well managed. His lungs were clear during routine medical appointments in January and February. And in February, Jennifer Bow—a nurse practitioner working under Dr. Mehta—noted that Sosh's breathing was "doing very well," Sosh had not experienced any further exacerbations, and he had not recently needed to use his rescue inhaler. During routine monthly follow-ups with his primary care provider in the spring, Sosh demonstrated wheezing and reported increased nebulizer use because of cold weather. But other than what his primary care provider referred to as a "slight exacerbation of COPD" in August (for which Sosh received steroids), Sosh did not seek any treatment for respiratory issues. Nor, for most of the year, did he exhibit respiratory symptoms.

## B. Procedural history

Sosh applied for disability insurance benefits and supplemental security income, alleging that he became disabled on September 1, 2014, after developing COPD, sustaining injuries in his back, knee, and shoulders, and experiencing anxiety and depression. Sosh supplemented his application with a June 2016 statement from Nurse Practitioner Bow addressing how his COPD would affect his ability to work. Bow described Sosh's COPD prognosis as "slightly declining," stated that he had good and bad days, and opined that if he were to work, he would need one or two unscheduled breaks per day, would be off task for 10 percent of the workday, and would miss three days of work per month. Bow further opined that Sosh's COPD caused him to have four asthma attacks per year and each attack incapacitated him for one week.

Dr. J. V. Corcoran—a non-examining physician and agency consultant—also reviewed Sosh's medical records and concluded that Sosh's COPD could be controlled by limiting his exposure to pulmonary irritants. Dr. Corcoran opined that Sosh needed

to avoid concentrated exposure to extreme temperatures and humidity and avoid even moderate exposure to other irritants that could exacerbate his COPD like fumes, dusts, or gasses. But Dr. Corcoran did not recommend any limitation to account for time that Sosh would need to spend off task or absent from work, and the doctor concluded that the record contained no evidence to support Sosh's allegation that his COPD was worsening.

At a hearing before an ALJ, Sosh testified that he was unable to work because of his COPD, among other injuries and impairments. Sosh said that vacuuming the car or taking excessively hot showers triggered his COPD. He added that, despite taking two preventative inhalers a day as well as an emergency inhaler and nebulizer when needed, he still had been hospitalized "a few times."

The ALJ concluded that Sosh was not disabled. She acknowledged that Sosh had several severe impairments (COPD, along with anxiety, carpal tunnel, obesity, and disorders in his shoulder and back). But she concluded—based on Dr. Corcoran's opinion, to which she assigned "great weight"—that Sosh retained the residual functional capacity to perform light work so long as, among other limitations, he avoided exposure to extreme temperatures or pulmonary irritants. Relying on a vocational expert's testimony, the ALJ concluded that a person with Sosh's limitations could find work in the national economy.

The ALJ considered whether Sosh's COPD placed additional restrictions on his ability to work, beyond those suggested by Dr. Corcoran, but she concluded that it did not. She first addressed whether his history of emergency treatments and hospitalizations warranted additional restrictions. The ALJ reasoned that, apart from isolated exacerbations in 2014 and 2015, Sosh's COPD was relatively well controlled and did not cause disabling symptoms or functional limitations. She also declined to adopt the restrictions proposed by Nurse Practitioner Bow and gave Bow's statement only "partial weight." She explained that Bow's statement was inconsistent with Bow's own treatment records from February 2016, with Sosh's pulmonary-function test, and with other treatment records from Dr. Mehta and Sosh's primary care provider.

The Appeals Council denied review, and so the ALJ's decision was the Commissioner's final decision. *See Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The district court upheld the agency's decision. It rejected Sosh's contention that he was entitled to further restrictions to accommodate his COPD, concluding that the ALJ gave valid reasons for rejecting Bow's opinion and that Sosh could not point to any evidence warranting further restrictions.

## II. Analysis

On appeal, Sosh first contends the ALJ erred in her analysis of his residual functional capacity because she failed to include enough restrictions to accommodate his COPD. In particular, he argues that the ALJ ignored his need to take breaks during work to use his nebulizer, and the likelihood—based on his history of hospital visits— that he would need to take sick days in the future.

We are not persuaded that Sosh is entitled to any restriction related to the use of a nebulizer at work. Although his primary care provider prescribed nebulizer treatments for him every six hours "as needed," the record does not indicate how often Sosh actually needs treatments or uses his nebulizer. Sosh argues that because he was using his nebulizer on "some basis," the ALJ should have explained why he would *not* need to use it at work. But Sosh, not the ALJ, had the burden to present medical evidence in support of his claim. *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). A claimant who does not "identify medical evidence that would justify further restrictions" is not entitled to remand. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016).

Substantial evidence also supports the ALJ's conclusion that Sosh's emergency-room visits and hospitalizations were isolated incidents and that Sosh's COPD otherwise caused no functional limitations. When medical professionals examined Sosh between his exacerbations, they consistently noted that his lungs were clear with normal function or only mild obstruction. And after Sosh's release from the hospital in June 2015, his COPD remained stable for the rest of 2015 and 2016. From that point on, he usually exhibited no respiratory symptoms. Any symptoms that did arise were milder than before: Sosh's primary care provider noted wheezing and Sosh's reports of increased nebulizer usage in Spring 2016, but he prescribed no additional treatment; and in August 2016, the same provider described Sosh's symptoms as only a "slight exacerbation of COPD." Based on this record, the ALJ reasonably concluded that Sosh's COPD was "relatively under control."

Sosh next contends that the ALJ improperly disregarded Nurse Practitioner Bow's opinions that he needed unscheduled breaks during the workday, would be off task for 10 percent of the time, and would miss 3 days of work each month. Sosh acknowledges that Bow—a nurse practitioner rather than a physician—was not an "acceptable medical source" under the agency's rules at the time. *See* SSR 06-03p. But Sosh maintains that the ALJ still needed to weigh her opinion using the same factors that apply to acceptable medical sources. *See* 20 C.F.R. § 404.1527(c).

So long as an ALJ "minimally articulate[s]" her reasons, however, we will uphold her decision to reject a medical opinion. *Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008). True, the ALJ here did not explicitly consider every factor listed under § 404.1527(c). But for someone like Bow who was not an acceptable medical source, the application of these factors "depends on the particular facts" and "not every factor … will apply in every case." 20 C.F.R. § 404.1527(f)(1).

Here, the ALJ adequately explained why she gave Bow's opinion only partial weight. As she aptly pointed out, Bow's description of Sosh's condition contradicted multiple sources in the record. Bow opined that Sosh's COPD was worsening, with daily complications and incapacitating, week-long asthma attacks four times a year. In contrast, Bow's own treatment notes from February 2016 stated that Sosh's COPD had improved, and her supervisor, Dr. Mehta, diagnosed Sosh with only mild COPD. Bow's opinions were further contradicted by Sosh's pulmonary-function test in 2015—which showed only mild obstruction—and Sosh's chest x-ray in June 2016 which showed his lungs were clear. Finally, Sosh's June 2016 opinion also contradicted treatment notes from Sosh's primary care provider which showed that Sosh had at most only two flare-ups of his COPD in 2016, neither of which required serious treatment. Sosh's primary care provider even noted in July 2016 that Sosh's "lungs [are] clear." An ALJ is entitled to reject a medical statement when, as here, it is contradicted by other evidence, including the statement provider's own treatment notes. *See* 20 C.F.R. § 404.1527(c)(3)–(4); *Burmester v. Berryhill*, 920 F.3d 507, 512 (7th Cir. 2019).

## III. Conclusion

Because substantial evidence supports the ALJ's decision, we AFFIRM the district court's judgment.