In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-4003

KIRK W. STEPHENS,

*Plaintiff-Appellant*,

*v.*

NANCY A. BERRYHILL, Deputy
Commissioner for Operations,
Social Security Administration,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 15-CV-00043 — **Joseph S. Van Bokkelen**, *Judge*.

ARGUED APRIL 21, 2017 — DECIDED APRIL 24, 2018

Before WOOD, *Chief Judge*, SYKES, *Circuit Judge*, and
COLEMAN, *District Judge*.[*]

COLEMAN, *District Judge*. Kirk W. Stephens contends that
he is disabled by diabetes, kidney disease, knee and back

* Of the Northern District of Illinois, sitting by designation.

pain, heart disease, high blood pressure, asthma, arthritis, and obesity. He applied for and was denied Supplement Security Income ("SSI") benefits; on review the district court reversed and remanded for a new hearing. Following the second hearing, a different Administrative Law Judge ("ALJ") determined that Stephens' impairments, although severe, were not disabling and that he could perform relevant past work. The district court upheld the agency's decision. We affirm.

## I. Background

Stephens was born in 1957 and has a ninth grade education. He worked as a taxi dispatcher and a security guard in the 15 years preceding his alleged disability. Stephens has a family history of diabetes, hypertension, and heart disease. Several of his family members suffered heart attacks in their sixties.

Stephens has an extensive history of medical ailments. He was a pack a day smoker for 20 years, quitting in June 1998. In 1999, Stephens was diagnosed with diabetes mellitus, type 2. Shortly after moving in with his mother and uncle, Stephens contracted pneumonia. In 2000, he had surgery to resolve a problem with "redundant foreskin," which was not entirely successful. In 2003, Stephens was diagnosed with hypertension and was referred for evaluation for chronic kidney disease. Stephens was also suffering from insomnia, reflux, and renal artery disease.

By 2006, Stephens had persistent pain in his neck and mid-back. His body mass index ("BMI") fluctuated from 38.14 to 43.7 between 2008 and 2013, the available time frame.

In July 2009, Stephens was having problems sleeping, causing daytime sleepiness. Dr. Hector Perez noted "diabetic nephrology" in August 2009. While examining Stephens for pain in his left thumb, right shoulder, hips, and knees in July 2010, Dr. Christopher LaSalle noted the following ailments: fecal incontinence, insomnia, night sweats, urinary retention, and sleep apnea. Dr. William Smits diagnosed sleep apnea and sleep disturbance in August 2010 and sent Stephens to a sleep specialist, Dr. Sanjay Jain, who performed a CPAP sleep study. Stephens began with a nasal mask for the CPAP but switched to a face mask because it was uncomfortable.

By October 2010, activity aggravated Stephens' knee pain, which improved with rest. He continued to suffer from insomnia, shortness of breath, and urinary retention and weakness. He also had chronic inflammation of the foreskin tissue that was unresolved by circumcision in 2000. A second circumcision to remove the irritated foreskin helped, though he still had trouble urinating. In November 2010, he underwent surgery for prostate issues that caused him to take up to two minutes to void. Following the prostate surgery, his condition improved but was not completely resolved.

Stephens had trouble adjusting to the CPAP, and his insomnia persisted without regular use of the CPAP. He suffered from ongoing fecal incontinence, urinary retention and weakness, and lumbar back pain. Dr. Sanjay Patel noted intermittent symptoms of Chronic Kidney Disease. By November 2012, Stephens used his nebulizer two to three times a day. Dr. Guy Asher opined that Stephens' hypertension and diabetes were causing Chronic Kidney Disease. Dr. Asher also noted anemia and hyperparathyroid issues.

Stephens applied for SSI benefits, asserting a disability onset date of January 5, 2007. The ALJ considered the application and issued an unfavorable decision on October 24, 2011. The district court reversed and remanded for a new hearing.

Stephens filed a subsequent application for SSI, and the State Agency issued a favorable decision, finding Stephens disabled from the date of his application on March 18, 2013. The agency did not address the period between January 5, 2007, and March 18, 2013. On September 26, 2014, following the remand from the district court, a different ALJ held a second hearing. Stephens' onset date was amended to March 31, 2010, to conform to the protective filing date.

The ALJ found that Stephens had not worked since his March 31, 2010, onset date, and that he suffered from the following severe impairments that caused more than minimal limitations on Stephens' ability to work: insulin dependent diabetes mellitus; osteoarthritis of the spine and knees; obesity; chronic obstructive pulmonary disease ("COPD"); and heart disease. The ALJ concluded that Stephens had the residual functional capacity ("RFC") to perform past work as a security guard or taxi dispatcher. Stephens was limited to sedentary work with normal breaks. His limitations further required the option to alternate between sitting and standing approximately every 45 minutes, but the positional change would not render him off task more than 10 percent of the work period. He could occasionally climb ramps and stairs, balance, stoop, crouch, kneel and crawl, but never climb ladders, ropes, or scaffolds.

The ALJ's unfavorable decision became final when the Appeals Council did not review the decision. Stephens filed

a complaint for district court review. The district court upheld the agency decision. This appeal followed.

## II. Discussion

We review the district judge's decision *de novo* and therefore ask whether the ALJ based her decision on substantial evidence. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). We will reverse the Commissioner's finding only if it is not supported by substantial evidence or if it is the result of an error of law. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In rendering a decision, the ALJ must build a logical bridge from the evidence to her conclusion. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). While our review is deferential, it is not intended to be a rubber-stamp on the Commissioner's decision. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

An individual is disabled if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration employs a five-step process to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4). Here, the ALJ concluded her inquiry at step four: If the impairment is not one of the listed impairments, then the ALJ reviews the claimant's residual functional capacity and the physical/mental demands of past work. If the claimant can perform past work, then he is not disabled. 20 C.F.R. § 404.1520(e).

Stephens raises three issues on appeal. First, he asserts that the ALJ erred by improperly evaluating his obesity when determining the aggregate impact of his impairments. Next, he challenges the ALJ's finding that the record lacked medical opinion evidence as to Stephens' hypersomnolence or excessive sleepiness. Lastly, Stephens contends that the ALJ failed to incorporate all of his impairments and consider their combined impact to evaluate his residual functional capacity. We address each issue in turn.

### A. Obesity

As this Court has held, while obesity is no longer a standalone disabling impairment, the ALJ must still consider its impact when evaluating the severity of other impairments. *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016) (citing *Castile v. Astrue*, 617 F.3d 923, 928 (7th Cir. 2010)). We recognize that the combined effect(s) of obesity with other impairments may be worse than those same impairments without the addition of obesity. *See Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40.").

Stephens argues that the ALJ did not give enough consideration to the effect his obesity has on his multiple impairments and did not consider obesity as an independent

impairment. We disagree. The ALJ gave significant consideration to Stephens' obesity and its impact.

The ALJ found at step two that obesity was a severe impairment. At step three, the ALJ began her discussion of Stephens' impairments by noting his weight and BMI in March 2010, the disability onset date. She further considered his classification as Level II obese, and noted the aggravating effects of obesity on Stephens' other impairments. At step four, she again noted his height and weight, and specifically addressed the aggravating effects of Stephens' obesity. She noted however that the medical records did not separately report any limitations due to obesity. The ALJ concluded that she should not speculate on additional functional effects of obesity unsupported by the record. Nevertheless, she found that Stephens' obesity enhanced the credibility of his statements of pain. In finding Stephens limited to sedentary work with a sit/stand option, the ALJ deferred to Stephens' own reported limitations. Thus, the ALJ built a logical bridge between the evidence and her conclusion. Stephens fails to demonstrate that the ALJ gave insufficient consideration to his obesity and its impact.

### B. The Treating Physician Rule

Stephens challenges the ALJ's finding that the record lacked medical opinion evidence as to Stephens' hypersomnolence or excessive sleepiness. "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at 870 (citing 20 C.F.R. § 404.1527(d)(2)).

It was not error for the ALJ to conclude that there was no opinion from a treating or examining source. Stephens contends that the ALJ improperly discounted Dr. Sanjay Jain's statement that Stephens should not drive if he has hypersomnolence. This recommendation is not a medical "opinion" triggering the treating physician rule. Medical opinions are statements from medical sources that reflect judgments about the nature and severity of a claimant's impairment. 20 C.F.R. § 416.927 (a)(1). Moreover, the ALJ considered Stephens' sleep apnea and fatigue as part of her evaluation of his residual functional capacity at step four. The relevant past work which the ALJ concluded that Stephens could perform does not involve driving. Thus, even if Stephens' hypersomnolence imposed an additional limitation on driving, the ALJ's determination would be unaffected.

## C. The Combined Impact of Impairments

Lastly, Stephens contends that the ALJ failed to incorporate all of his impairments and consider their combined impact to evaluate his residual functional capacity. Stephens points specifically to his urination issues, balance, and upper extremities, as impairments that were not fully considered. We disagree.

"The ALJ need not … provide a 'complete written evaluation of every piece of testimony and evidence.'" *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005) (quoting *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)). The ALJ "may not select and discuss only that evidence that favors [her] ultimate conclusion," *Diaz*, 55 F. 3d at 307, but "must confront the evidence that does not support [her] conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374

F.3d 470, 474 (7th Cir. 2004). Here, substantial evidence supported the ALJ's decision.

The ALJ considered the medical evidence supporting each of these issues and found that they did not require additional work-related limitations. Stephens contends that the ALJ should have included additional bathroom breaks in the RFC. Yet, Stephens' urinary issues were resolved and he had no urinary complaints as of 2012 when he saw Dr. Thomas, his urologist. The ALJ noted that the medical record showed no urinary complaints after May 2011. Thus, the ALJ properly found no work-related limitations of any twelve month period relating to Stephens' urinary issues. *See* 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.").

The RFC provided, among other things, that Stephens can occasionally balance. Stephens claims this determination is illogical based on his obesity and knee problems. "Occasionally," though, does not mean that he must be able to balance for two hours and forty minutes as Stephens suggests. "'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8–hour workday." *Hodges v. Barnhart*, 509 F. Supp. 2d 726, 735 (N.D. Ill. 2007) (citing SSR 96–9p). Stephens does not explain how his slight limp and antalgic gait undermine the ALJ's determination. Moreover, the ALJ considered Stephens' joint and knee problems throughout her evaluation and further relied on state agency reviewing physicians who concluded that Stephens can perform light work with occasional postural movements. The RFC accounted for these limitations.

Stephens also argues that the ALJ improperly discounted functional problems in his hands and should have included manipulation limitations in the RFC. The ALJ properly found that Stephens did not have a medically determinable impairment of his right hand. In reaching this conclusion, she relied on the consultative examination by Dr. Ringel on June 8, 2010, noting some loss of fine motor control in both hands; Stephens' internist's notes from July 21, 2010, showing severe crepitation in the right thumb; a July 29, 2010, note from a physician assistant indicating "normal" right wrist and hand; Dr. LaSalle's notes from May 10, 2012, also finding Stephens' right wrist and hand normal; and a June 2013 consultation exam finding slow and clumsy fine finger manipulabilities. Based on these medical records, the ALJ concluded that there was no diagnosis or treatment for right hand impairment or evidence of ongoing functional limitations.

Likewise, the ALJ's evaluation of Stephens' left hand was supported by substantial evidence. Stephens had surgery on his left thumb in May 2011, and the surgeon's follow-up notes reflect that Stephens was doing "wonderfully" with a little achiness. His physical therapist noted full range of motion, pain-free, with no need for additional therapy. Similarly, follow-up with his surgeon in May 2012, revealed no numbness or tingling with normal functioning of the left wrist and hand. Thus, the ALJ properly concluded on this evidence that any impairment of his left hand was non-severe.

The ALJ's decision to deny benefits was based on substantial evidence. Accordingly, the judgment of the district court is AFFIRMED.