**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 4, 2020
Decided August 18, 2020

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-3366

| | |
|---|---|
| NICHOLAS W. BARRETT, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 18-2217 |
| | |
| ANDREW M. SAUL, | Eric I. Long, |
| Commissioner of Social Security, | *Magistrate Judge*. |
| *Defendant-Appellee.* | |

**O R D E R**

Nicholas Barrett, a 48-year-old man suffering from ankle pain, challenges the denial of his applications for social security benefits. He argues that the administrative law judge improperly discounted his complaints about the intensity and persistence of his ankle pain, so his actual residual functional capacity was more restrictive than what the ALJ found. But because substantial evidence supports the ALJ's conclusion, we affirm.

## Background

In the fifteen years before applying for benefits, Barrett worked in a variety of roles, such as a loan officer at a pawn shop, a heavy-equipment operator loading trucks, and a machine operator. But in March 2013, he injured his left ankle in a motorcycle accident that necessitated three surgeries in the following weeks, leaving him in much pain.

In January 2015, Barrett applied for disability insurance benefits and social security income, asserting that he had been unable to work since the accident because of ankle pain—pain that limited his ability to walk, sit, and stand. The Social Security Administration denied his claims at all levels of review.

Over the next two months, Barrett had an x-ray and CT scan of his left ankle taken, both showing deterioration of the joint. The radiologist noted that the x-ray showed "postoperative and posttraumatic changes of the ankle," "marked degenerative changes" of the joint, as well as mild soft tissue swelling. And the CT scan showed "[s]ignificant degenerative changes" of the ankle and "significant subchondral cystic changes of the talar dome."

In May 2015, a consulting physician examined Barrett in connection with his applications and concluded that he had full range of motion of all his joints, except for his "fused" left ankle. Barrett complained of pain, rating it between a six and seven on a scale of one to ten (with ten being the maximum). He took codeine four times a day for the pain but stated that he could not stand for any length of time or get comfortable. The doctor noted that Barrett's gait favored the ankle but that he did not need or use an assistive device.

That same month, another consulting physician reviewed Barrett's record and noted Barrett's severe ankle impairment but opined as part of her residual-functional-capacity analysis that he still could stand or walk for two hours and sit for six hours in an eight-hour workday. A second reviewing physician confirmed this opinion a few months later.

In March 2016, Barrett began primary care with Dr. Gindi, who diagnosed him with chronic ankle pain and arthritis. Barrett, standing 6'2" tall and weighing 286 pounds (for a BMI of 37.2), had mild swelling and limited range of motion in the joint. Barrett rated his pain as an eight out of ten but indicated that this was eased somewhat by the codeine. Barrett returned later that month to discuss pain management, stating that he was in constant pain and rating it as a nine out of ten. Dr. Gindi prescribed more codeine.

Barrett saw Dr. Gindi or his assistant five more times over the next year. In May, when Barrett returned to discuss pain management (and his smoking), Dr. Gindi noted that he had a good range of motion in his ankles with no swelling in his extremities but that he had arthritis in the left ankle. Barrett returned a few months later with complaints of pain, and Dr. Gindi noted that his range of motion in his left ankle was now limited (because of the surgeries), but he had no tenderness or swelling. On his next visit, a physician's assistant noted that medication, particularly codeine, kept Barrett's pain "stable." Days later Barrett complained of constant pain while walking and sitting (he assessed it that day as a seven out of ten), but added that the medicine helped, and Dr. Gindi noted that his left ankle had a normal range of motion and was not tender. Barrett returned three months later—having run out of pain medicine—and was given another prescription by the physician's assistant, who noted that his left ankle continued to have a normal range of motion and no tenderness.

At a hearing four months later before the ALJ, Barrett testified about his limitations from his ankle pain. He took medications "to deal with" the pain, which he rated as a four (out of ten) if he was not active; without the medication, he rated the pain as a seven to eight. And while he could sit "for a while" at one time, Barrett could stand for only ten minutes at a time because the throbbing "gets so bad" that he would have to adjust or elevate his ankle to relieve the pain. The ALJ also observed that, despite Barrett alleging that he was disabled since the 2013 accident, his file lacked any records from before February 2015. And when asked by the ALJ whether he had ever tried to see a specialist for other treatment options for his ankle pain (like an injection), Barrett stated that his primary care doctor had never referred him to one nor had he asked.

The ALJ then posed two hypothetical questions to a vocational expert. In the first scenario, the ALJ limited the individual to, in an eight-hour workday, standing or walking for two hours total and sitting for at least six hours. The vocational expert testified that the individual could perform Barrett's past work as a pawn broker. And in the second, the ALJ added certain mental limitations to the physical limitations in the first. Although the individual could not work as a pawn broker, he could work as a router, routing clerk, or mail sorter.

Applying the standard five-step process, *see* 20 C.F.R. §§ 404.1520, 416.920, the ALJ concluded that Barrett was not disabled. Barrett's left ankle degenerative joint disease and obesity were severe impairments since March 2013, but neither, alone or in combination, met or equaled a listing consistent with a presumptive disability. And he maintained the residual functional capacity, the ALJ found, to stand or walk for two

hours total and sit for six hours in an eight-hour workday. With this capacity to do limited work, consistent with the vocational expert's opinion, the ALJ concluded that Barrett could work as a pawn broker, router, routing clerk, or mail sorter.

As for Barrett's testimony at the hearing (and other statements he made in written submissions), the ALJ concluded that his subjective complaints of debilitating pain were inconsistent with the record evidence. His file lacked records from his alleged onset date through early 2015, and Barrett's non-response to this point (when prompted by the ALJ) and failure to offer to seek out this evidence was "concerning." And what was in the record did not support a complete inability to work. The earliest records, the 2015 x-ray and CT scan, showed no fracture or dislocation but rather "post-operative and post-traumatic changes of the distal tibia and fibula," as well as mild swelling with evidence of the old fracture. While Barrett complained of ankle pain at his May 2015 consultative exam, his file lacked other medical records until he began seeing Dr. Gindi in 2016, and those records (especially of his later visits) indicate that Barrett's pain was "stable while on med[ication]." His record lacked any indication that he sought out care from a specialist to see if there were other options to help with his pain (including injections at his ankle), and although Barrett used a cane at his hearing, he did not use one at his May 2015 exam.

The Appeals Council denied review. And the district court upheld the ALJ's decision, finding it supported by substantial evidence—including the lack of records from 2013–2015, the ALJ's accurate summary of the 2015 x-ray and CT scan, Barrett's year-long gap in treatment until 2016, and 2016 records showing Barrett's condition to be stable.

## Analysis

We review the district court's decision de novo and ask whether the ALJ's decision was based on substantial evidence. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

On appeal, Barrett argues that the ALJ overstated his residual functional capacity by improperly discounting his testimony and subjective complaints about the intensity and persistence of his ankle pain. In his view, his complaints of severe pain are corroborated by evidence in the record, for instance, of his multiple surgeries, his need to use a cane and crutch to move around, and his efforts to mitigate his pain with

medication. And even if the ALJ deemed this evidence insufficient, he adds, she overlooked the fact that pain alone can be disabling.

To evaluate his subjective complaints, the ALJ was required to consider both the objective medical evidence and other evidence, including information provided by his treating physician, other medical opinions, the effectiveness of any medication taken, and treatment received apart from medication. *See* 20 C.F.R. § 404.1529(c) (listing factors to consider in determining extent to which pain limits capacity to work); *see also id.* § 404.1520c(c) (listing factors to consider in reviewing medical opinions).

Substantial evidence supports the ALJ's conclusion that Barrett's complaints of debilitating pain were not entirely consistent with the record evidence. Here, the ALJ substantiated her conclusion with reasons grounded in the record. Barrett's treatment records were spotty: He failed to produce any records—or explain their omission—between 2013 (despite having alleged an onset date that March) and early 2015. His latest records from his primary doctor (whom he began seeing only in 2016) indicated that his pain was being controlled ("stable") with medication and that he had normal range of motion with no tenderness or swelling in his ankle. And two reviewing doctors—albeit with no elaboration—determined that Barrett was capable of light work, with limitations.

Further, we cannot say that the ALJ's partially adverse credibility finding was "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667–68 (7th Cir. 2008)). Barrett makes no effort to challenge the evidence relied upon by the ALJ and instead refers only to other, less-persuasive evidence: the fact of his 2013 accident and surgeries (unsupported by contemporaneous records), his asserted need for a cane (inconsistent with his 2015 examination), and his need for medication to manage pain. But when reviewing the administrative record, we do not "reweigh the evidence or substitute our judgment for that of the [ALJ]." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018). Even if "reasonable minds could differ concerning whether [Barrett] is disabled," we must uphold the ALJ's decision as long as it is supported by substantial evidence. *L.D.R. v. Berryhill*, 920 F.3d 1146, 1151–52 (7th Cir. 2019) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

Relatedly, Barrett contends that the ALJ "downplayed" and "cherry-pick[ed]" evidence from the 2015 x-ray and CT scan, omitting from her summaries any mention of the "marked" and "significant" degenerative changes in the ankle and soft tissue swelling. But the ALJ noted the swelling. True, the ALJ did not mention the degenerative changes in her factual summary, but she did note that the x-ray showed

"post-operative and post-traumatic changes" of the tibia and fibula, and she credited the opinions of the reviewing consultants who reviewed these same records but nonetheless concluded that Barrett was capable of light work, with limitations.

AFFIRMED