**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 17, 2020
Decided December 3, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-1687

| | |
|---|---|
| KATHRYN JO HARRIS, <br> *Plaintiff-Appellant*, | Appeal from the United States District <br> Court for the Southern District of Illinois. |
| *v.* | No. 19-cv-870-DGW |
| ANDREW M. SAUL, <br> Commissioner of Social Security, <br> *Defendant-Appellee*. | Donald G. Wilkerson, <br> *Magistrate Judge*. |

**O R D E R**

Kathryn Harris, a 50-year-old woman suffering from mental illnesses and anxiety, challenges the denial of her application for disability insurance benefits. She argues that the administrative law judge failed to develop the record, misevaluated the medical opinions, and wrongly discounted her statements about the limiting effects of her symptoms. But because substantial evidence supports the ALJ's conclusion, we affirm the judgment.

**Background**

For more than a decade before applying for benefits, Harris worked off-and-on as a registered nurse at hospitals, nursing homes, and an in-home healthcare company. But beginning around 2013, Harris began to suffer from depression and anxiety.

For three days that year, Harris was hospitalized for increasing depression. Dr. Elbert Lee, her psychiatrist, treated her, noting that while this was her first inpatient psychiatric hospitalization, Harris had a "history of mood disorder" that had been unresponsive to anti-depressive medications. This time, though, medications and therapy helped her symptoms, and she was discharged. (Hospital documents indicate that Harris planned to follow up with Dr. Lee, but the record lacks any treatment records until early 2015[1]—an omission that, she believes, undercuts the ALJ's decision.)

Between early 2015 and mid-2016, Harris saw Dr. Lee monthly for treatment of her mental illnesses with various medications. Dr. Lee usually recorded that Harris was pleasant and cooperative with normal thought processes, judgment, and concentration. In mid-2015, though, Harris was arrested for domestic violence, an episode that Dr. Lee attributed "possibly" to her Adderall, so he discontinued the drug. Harris then reported problems concentrating, but a new medication helped. In late 2015, Dr. Lee wrote in his notes that her concentration and attention were impaired and that she was disabled.

Around this time, Harris applied for disability insurance benefits, asserting that she had been unable to work since 2013 because of both back problems and mental conditions, including depression and anxiety.

In May 2016, Dr. Jerry Boyd, a licensed clinical psychologist acting as an agency consultant, examined Harris and diagnosed mental illnesses, but Harris indicated that her medication helped "tremendously" with them. His exam showed that Harris had "no significant impairment" in attention and concentration, and while she was distractible with a "minimal tolerance for stress now" and reported an inability to work, she could follow complex instructions if they could be repeated.

That same month another consulting psychologist, Dr. Joseph Mehr, reviewed Harris's record and characterized her professed concentration and social interaction

---

[1] Although the Administration requested Dr. Lee's records since 2012, when Harris says her treatment with him began, a handwritten notation on the returned request form reads "Over 500 pages. Sent last 2 years. 2015–present."

limitations as "beyond what would be expected" from the medical evidence. He relied on Dr. Boyd's opinion as an examining source and concluded that Harris could sustain work involving simple tasks on a continued basis, particularly in settings of low social contact. Two months later, Dr. Ellen Rozenfeld, another consulting psychologist, reviewed Harris's record and reached similar conclusions as Dr. Mehr.

In early July 2016, Dr. Lee wrote a one-page, to "whomever it may concern" letter, reiterating that Harris was disabled and unable to work due to her mental illnesses and chronic pain. In his treatment notes from a visit the same day, Dr. Lee found Harris to have normal thought processes, judgment, and concentration.

But later that month, Harris spent three days in the hospital after an acute onset of paranoid delusions, a condition Dr. Lee later confirmed to be caused by some of her medications (which he discontinued). At two follow-up appointments, he noted that her psychosis had "resolved" and she had normal thought processes and concentration.

Harris continued to see Dr. Lee through early 2018, and at each appointment he noted that she was pleasant and cooperative with an "okay" mood and affect and normal concentration. In March 2018, Dr. Lee reported that Harris's severe anxiety and depression would, since 2013, cause her to be absent four or more times from work per month and that her subjective complaints were credible.

At a hearing before the ALJ, Harris, represented by counsel, testified about how her stress and anxiety limited her ability to work.[2] She described how she could become anxious for no reason. The hearing, for example, put her in a "total panic attack" for the past few months because she had to leave her house that she left only rarely. But seeing a psychiatrist and taking her medication regularly helped, she said.

The ALJ asked a vocational expert about available work for a person like Harris who was limited to light, rote work requiring "little independent judgment" in a "stable setting" with only limited interaction with others. That person, the VE testified, would be precluded from Harris's prior work, but could work as a checker, mail sorter, or laundry folder—as long as she did not need any off-task break longer than 15 minutes beyond normal or more than two days' absences per month.

---

[2] At the outset, counsel stated that he had no objection to the exhibits in the record. And earlier, counsel had written to the ALJ that he had "filed or made the … Administration aware of all" the medical records he knew of.

Applying the standard five-step process, *see* 20 C.F.R. § 404.1520, the ALJ concluded that Harris was not disabled. Her depression, personality disorder, anxiety with agoraphobia, and attention deficit hyperactivity disorder were severe impairments, but none, alone or in combination, were a presumptive disability. Harris, the ALJ determined, had the residual functional capacity to perform light, rote work requiring little independent judgment in a stable setting with only occasional interaction with coworkers and her supervisor. And with those limitations, the ALJ concluded, Harris could work in jobs available in the national economy.

Concerning the severity of her symptoms, the ALJ concluded that Harris's statements were "not entirely consistent" with the record. She testified that seeing a psychiatrist and medication helped her anxiety, for example. And although she said she took them as prescribed, at her 2013 hospitalization she had stopped taking the medication (she was "tired" of them), and her doctors were concerned about possible abuse of them after her later arrest. The ALJ also noted that symptoms causing that hospitalization improved with treatment and that her 2016 hospitalization was caused by her medication that since had been discontinued.

As for opinion evidence, the ALJ gave "little weight" to Dr. Lee's reports about Harris being disabled because he had otherwise "consistently found" Harris to be cooperative with normal mood, affect, and concentration. The ALJ gave "limited weight" to Dr. Boyd's assessment because "[w]hile his clinical observations [we]re instructive, he did not provide objective mental limitations" to help him frame an RFC. And he gave "great weight" to the opinions of Drs. Mehr and Rozenfeld even though more (consistent) evidence was added to the record after their analysis.

The Appeals Council denied review, and the district court upheld the ALJ's decision.

**Analysis**

We review the district court's decision de novo in determining whether the ALJ's decision was based on substantial evidence. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

On appeal, Harris argues that the ALJ failed to develop the record to include Dr. Lee's pre-2015 treatment notes, which she says are important to show her history of

a mood disorder that was unresponsive to different medications. But it was reasonable for the ALJ to proceed on a record that Harris's previous counsel was satisfied with. An ALJ has a duty to fully and fairly develop the record. *See* 20 C.F.R. § 416.912(b); *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). But a represented claimant, like Harris, "is presumed to have made h[er] best case before the ALJ." *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). Here, her counsel both wrote to the ALJ that the record was complete and stated that he had no objection to it at the hearing. And as Magistrate Judge Wilkerson explained, that record was adequate to permit an informed decision.

Next, Harris challenges the ALJ's evaluation of the opinion evidence, first arguing that he erred in rejecting Dr. Lee's opinions that she had been disabled since 2013. But the ALJ reasonably discounted Dr. Lee's opinions. The ALJ needed to consider the relevant regulatory factors, *see* 20 C.F.R. § 404.1527(c), and then "minimally articulate" his reasons for affording the opinions less weight. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)). Here, the ALJ was aware that Dr. Lee was Harris's treating psychiatrist who examined her almost monthly for at least three years, but he reasonably focused on how Dr. Lee's conclusions were unsupported by, and inconsistent with, his notes in the record. *See* 20 C.F.R. § 404.1527(c)(1)–(4). Other than in two visits in November and December 2015, Dr. Lee repeatedly documented that Harris's concentration was "normal" or not grossly impaired and he described her as pleasant and cooperative with normal thought processes, insight, and judgment.

Harris also argues that the ALJ erred in ascribing less weight to Dr. Boyd's opinion while assigning "great weight" to the agency doctors' opinions that relied on his exam. But the ALJ's determination was reasonable because, unlike Dr. Boyd, the agency doctors translated their findings into specific RFC assessments. *See Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (no error for ALJ to rely on only medical expert who made RFC determination). On questions concerning Harris's ability to sustain concentration and deal with normal pressures at work, for example, Dr. Boyd stated only generally that Harris "is notably distractible" and has a "minimal tolerance" for stress. The agency doctors, though, took Dr. Boyd's observations a step further, finding that Harris could work on "simple routine tasks … particularly in settings of low social contact" and deal with changes in work setting "if introduced gradually."

Harris also contends that the ALJ impermissibly offered his own medical opinion when finding that the evidence post-dating the agency doctors' opinions was consistent with the record. An ALJ may not "play[] doctor" and interpret "new and potentially

decisive medical evidence" without medical input. *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)). But here, the ALJ reasonably reviewed the evidence to determine that, aside from her two hospitalizations, Harris did not experience symptoms supporting greater limits than what the agency doctors found. It showed that her medicine caused the symptoms leading to her 2016 hospitalization (which Dr. Lee discontinued), and that she acted pleasantly at her later exams, exhibiting normal concentration and thought processes.

Finally, Harris contends that the ALJ wrongly minimized her statements concerning the effects of her symptoms. He used an incorrect standard, she argues, asking whether her statements were "entirely consistent" with the record instead of whether they "can reasonably be accepted" as consistent with it. But even though the "entirely consistent" language is boilerplate, the ALJ's recitation of it is harmless because he described (and applied) the correct standard of whether Harris's statements about her symptoms were substantiated by the objective medical evidence and other evidence in the record. *See* 20 C.F.R. § 404.1529(c); *see also Burmester v. Berryhill*, 920 F.3d 507, 510–11 (7th Cir. 2019). The ALJ highlighted relevant objective medical evidence, noting that aside from her two hospitalizations, Harris's mental exams were generally normal. He considered her use of medication, reasoning that it appeared to be providing her relief. And although she testified that she took her medications as prescribed, her 2013 hospitalization (where she stated that she had quit taking them) and her arrest (where her doctors were concerned about possible abuse) suggested otherwise. The ALJ also addressed her daily activities, noting that although she testified that she "rarely" drove or left her home, she later stated that she regularly (3–4 times per week) drove to pick up her brother. This analysis was not "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667–68 (7th Cir. 2008)).

For these reasons, we AFFIRM the judgment.